UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Drasko Draskovic, *et al.*, <br><br> *Plaintiffs*, <br><br> – against – <br><br> Oneota Associates, LLC, *et al.*, <br><br> *Defendants*. | **1:17-CV-5085 (ARR) (JO)** <br><br> **Not for Publication** <br><br> **Opinion & Order** |

ROSS, United States District Judge:

The plaintiffs in this case, a married couple, lived in and maintained an apartment building owned by defendants. The husband, who was employed as the superintendent, argues that he was paid less than the minimum wage and was not paid overtime. And the wife, who was paid nothing, argues that she should have been compensated for her assistance with the maintenance of the building. Meanwhile, the four defendants argue that only one of them was legally the husband's employer and that the wife is not owed anything.

The undisputed facts show that at least three of the defendants "employed" the husband within the meaning of the Fair Labor Standards Act and the New York Labor Law, and that the husband is entitled to some amount of damages. But genuine questions remain as to how much he is entitled to recover, as to whether his wife can recover at all, and as to whether recovery can be had from the fourth defendant. Thus for the reasons set forth below, the defendants' summary-judgment motion is denied, and the plaintiffs' is denied in part and granted in part.

# BACKGROUND

*The Defendants*

The remaining defendants[1] in this action are two brothers, Ronald Swartz and Steven Swartz, and two entities, Oneota Associates, LLC, and Paro Management Co., Inc. Ronald[2] is a manager of Oneota and the president of Paro. R. Swartz Dep. 10:6–7, 13:15–21, 59:3–6, ECF No. 43-3; Defs.' 56.1 Resp. ¶ 8, ECF No. 49-1. He is also associated with several other entities, all of which, including Oneota and Paro, operate out of a single office, where both individual defendants work. R. Swartz Dep. 8:11–9:25, 27:25–30:3, 35:20–36:4; S. Swartz Dep. 5:25–6:3, ECF No. 43-5; Defs.' 56.1 Resp. ¶ 3. Each of these entities owns real estate or provides services to owners of real estate. *See* R. Swartz Dep. 10:21–27:18. Both Ronald and Steven have ownership interests in Oneota, and Oneota in turn owns two neighboring apartment buildings in Astoria, New York, including the one where plaintiff Drasko Draskovic lived and worked. Defs.' 56.1 Resp. ¶ 1; Pls.' 56.1 Statement ¶¶ 6–7, ECF No. 48-1; R. Swartz Dep. 10:21–25.

Ronald also has an ownership interest in Paro, which provides various administrative services to real-property owners, including Oneota and many of the other property-owning entities that operate out of the defendants' office. *See* R. Swartz Dep. 13:15–15:4; Aldono Dep. 6:2–7:24, ECF No. 43-7. Although there are approximately twenty different property-owning entities for which Paro provides services, Ronald is the only representative of these entities with whom Paro's office manager, Jennifer Aldono, has ever interacted. *See* Aldono Dep. 6:8–25, 14:19–15:13. No written agreement governs the services that Paro provides Oneota. Defs.' 56.1 Resp. ¶ 4.

---

[1] The parties previously stipulated to the dismissal of defendant Herbert Hoffman from this action. *See* Stipulation of Dismissal, ECF No. 31.

[2] For brevity, I refer to the various members of the Swartz and Draskovic families by their first names only.

In addition to the individual defendants, at least ten other individuals are employed at the defendants' office. R. Swartz Dep. 29:19–30:10. Each of these employees performs a particular role on behalf of all the relevant entities. *See id.* at 30:24–35:12, 36:11–40:23.[3] Ronald has sole responsibility for determining the salary of each of these employees but, at his deposition, was unable to recall which entity actually employed which employee. *See id.* at 30:4–15, 45:24–46:10; *see also id.* at 137:2–138:21.[4] The entities also employ live-in superintendents in most of the "approximately 20 apartment buildings" they own. *Id.* at 41:10–43:5. Ronald testified that he alone is responsible for supervising and directing the work of the entities' superintendents. *Id.* at 44:21–45:7.

Although Steven works in the office, he holds no titled position at any of the entities and has no involvement with Paro. S. Swartz Dep. 8:16–18, 12:17–21; R. Swartz Dep. 59:25–60:4. Steven acknowledged that he "do[es] some stuff" for the entities but explained that his involvement has become much more limited in the last ten years. S. Swartz Dep. 6:19–7:4. According to his testimony, he has not been involved in the management of Oneota "for a long time." *Id.* at 44:16–19.

*The Plaintiffs*

In 1999, Drasko began working as the live-in superintendent at a 116-unit building owned by Oneota. Pls.' 56.1 Statement ¶¶ 13–14; Pls.' 56.1 Resp. ¶ 6, ECF No. 44-1.

---

[3] For example, one employee answers the phone on behalf of all the entities (R. Swartz Dep. 32:15–17), another handles filing for all the entities (*id.* at 32:25–33:3), another oversees the rentals for all the real-estate-owning entities (*id.* at 33:6–34:11), another manages the financial books and records for all the entities (*id.* at 34:14–20), another handles violations for all the real-estate-owning entities (*id.* at 34:23–35:8), another does paralegal work for all the real-estate-owning entities (*id.* at 36:23–37:6), another is an attorney for all the entities (*id.* at 37:20–38:18), and another handles the payroll for the employees of each of the entities (*id.* 39:25–40:9).

[4] Aldono, who testified on behalf of Paro, was similarly unable to identify which of the various people in the office were employed by Paro and which were not, and though she testified that Paro had "maybe five" employees, she could not name any of them. *See* Aldono Dep. 10:13–24, 12:4–13:6, 51:12–52:23.

According to Drasko, he worked every weekday from 6:30 or 7:00 AM until at least 5:00 or 6:00 PM, with time off for lunch and other breaks. D. Draskovic Dep. 79:20–24, 91:2–5, 105:3–106:3, ECF No. 43-6; Draskovic Aff. ¶¶ 2–3, ECF No. 48-17. On some weeknights, he testified, he was required to work even later, until "8:00, 9:00[, or] 10:00" in the evening. D. Draskovic Dep. 91:2–6; *see also* Draskovic Aff. ¶ 4. When he was not actively working, Drasko remained on call at all times in case of an emergency, when he was sometimes required to work in the middle of the night or on weekends. D. Draskovic Dep. 91:6–25; R. Swartz Dep. 95:4–24, 186:6–15; Draskovic Aff. ¶¶ 5–9. Defendants kept no records of the hours Drasko worked. Pls.' 56.1 Statement ¶ 26. Drasko estimated at his deposition, however, that he worked between forty and seventy hours each week. D. Draskovic Dep. 79:18–19, 99:12–17. In August 2017, he was terminated by Ronald. Defs.' 56.1 Resp. ¶ 75; Pls.' 56.1 Resp. ¶ 8.

Drasko's wife, plaintiff Radojka ("Rada") Draskovic, was never formally hired by the defendants but helped her husband with his superintendent work. Pls.' 56.1 Statement ¶ 33, Defs.' 56.1 Resp. ¶ 37; R. Draskovic Dep. 26:10–14, 28:11–14, ECF No. 43-8. In particular, according to her testimony, Rada facilitated communications between tenants and the defendants, showed apartments to potential tenants while her husband was otherwise occupied, tended the building's garden, assisted her husband with tasks that were "not a one-man job," received deliveries at the building when her husband was sick or away from the building, and exchanged emails with the defendants on her husband's behalf, as her husband's English skills were not up to the task. R. Draskovic Dep. 39:10–41:23, 42:24–43:14, 44:11–45:2, 46:13–19, 57:17–58:24, 64:15–17, 72:8–24. She testified that she did this work because she was expected to do it and because she feared that her husband would be fired if she refused. *Id.* at 48:16–19, 61:11–62:6, 67:10–22, 70:11–71:19, 123:7–13.[5] She estimates that the

---

[5] It is undisputed that she was never instructed to tend the building's garden herself. Pls.' 56.1 Resp. ¶ 26.

work she performed required between fifteen and twenty hours each week. *Id.* at 44:4–10, 75:8–11. Ronald testified that he had no knowledge of most of the tasks Rada claims to have performed, but he acknowledged knowing that she sometimes let inspectors and deliveries into the building and that the defendants received emails and tenant communications from her. *See* R. Swartz Dep. 98:5–100:2, 124:9–23, 136:2–6, 149:25–150:7, 170:9–13, 188:12–14, 189:20–192:8. It is undisputed that the defendants preferred to communicate through Rada rather than directly with her husband. Pls.' 56.1 Statement ¶ 42.

*The Parties' Working Relationship*

Drasko was originally hired to work at the building by the individual defendants' father, Arnold Swartz. Pls.' 56.1 Resp. ¶ 7. Drasko testified that Arnold was his "boss" at the building until around 2008. D. Draskovic Dep. 77:13–78:9, 89:2–8, 98:15–24, 119:4–7, 234:10–13. Rada testified that Arnold directed her to assist her husband as the "super's wife" but admitted that Arnold had not been her supervisor during the six years preceding the commencement of this lawsuit. R. Draskovic Dep. 37:2–11, 70:20–71:3.[6]

Drasko testified that Steven succeeded his father as the "boss" who was "in charge" of the building and that Steven continued in that role until around 2015. D. Draskovic Dep. 12:19–21, 77:13–78:9, 89:2–8, 98:15–24, 119:4–6, 223:11–13, 234:5–9. Both plaintiffs testified that while in charge, Steven appeared at the building about twice a week. *See* D. Draskovic Dep. 224:5–8; R. Draskovic Dep. 99:10–12. Though Steven acknowledges that he went to the building and "spoke to Drasko about his work," he denies doing so every week. S. Swartz Dep. 13:4–8, 16:21–17:10. Ronald testified that it was he, and not Steven, who bore final responsibility for supervising Drasko, although he acknowledged that he delegated that responsibility to "many different people," including Steven. R. Swartz Dep. 59:3–24. Ronald

---

[6] The longest statute of limitations relevant to this case is six years. *See infra* note 20.

also testified that Steven served as his "eyes and ears" at Drasko's building and was authorized to instruct Drasko in his work. *Id.* at 125:14–23. According to Rada, Steven directed both her and her husband in their work at the building. *See* R. Draskovic Dep. 48:21–49:14, 99:13–102:23.

In approximately 2015, Steven ceased stopping in at the building and interacting with the plaintiffs. *See id.* at 99:2–9; D. Draskovic Dep. 12:19–21, 98:15–18, 223:11–224:4; S. Swartz Dep. 16:21–17:7. It is undisputed that, at least as of that time, Ronald became Drasko's sole supervisor. *See* Pls.' 56.1 Resp. ¶ 12; D. Draskovic Dep. 77:20–78:9, 89:2–4.[7] It is also undisputed that the decision to terminate Drasko's employment was made by Ronald, without any involvement by Steven. Pls.' 56.1 Resp. ¶¶ 8–9.

In addition to the individual defendants, various employees of Paro or the other entities affiliated with the defendants also gave the plaintiffs instructions. *See* R. Swartz Dep. 16:22–17:7, 45:10–20, 59:11–61:20; Aldono Dep. 23:3–9, 37:19–39:10; D. Draskovic Dep. 78:18–79:11, 162:9–21, 188:10–17, 194:11–12, 243:21–25, 286:8–287:17; R. Draskovic Dep. 29:7–14, 37:5–8, 39:10–40:10, 44:17–45:2, 71:6–12, 120:23–121:5; *see also* Ricaurte Email, ECF No. 48-12 (email from defendants' employee to defendants and employees of defendants stating that, for upcoming week, "Drasko will not be in the building and out of contact," so they were to "contact his wife, Rada" as necessary). Ronald testified, however, that such instructions were simply his own instructions being relayed or an exercise of authority that he had delegated to another person. R. Swartz Dep. 45:10–17, 59:11–61:20.

*The Plaintiffs' Remuneration*

Ronald testified that the superintendents who worked under him managed their own work. *Id.* at 43:12–44:6. Thus Drasko had no regularly scheduled hours (*id.* at 94:21–25), and

---

[7] The defendants contend that Ronald was Drasko's supervisor for the entire duration of Drasko's employment. *See, e.g.,* R. Swartz Dep. 59:3–8, 65:15–66:3.

the defendants gave Drasko no written list of his job duties (Defs.' 56.1 Resp. ¶ 29). Overall, Ronald testified, Drasko was expected to work only twenty hours per week (R. Swartz Dep. 91:21–23, 93:20–23), and at no time was Rada engaged to perform any services at the building (*id.* at 150:11–15, 187:24–188:9).

Rada received no pay from the defendants. Pls.' 56.1 Statement ¶ 36.

Ronald determined Drasko's salary, which from 2011 until his termination consisted of semimonthly payments of $398.33. *See* R. Swartz Dep. 87:4–6; S. Swartz Dep. 13:21–14:3, 19:12–20:18; Aldono Dep. 19:5–21:7, 22:18–21; Defs.' 56.1 Resp. ¶ 23; Wage Statements, ECF No. 48-16.[8] This amount, Ronald attested, was based on the legal minimum wage assuming a twenty-hour workweek. R. Swartz Dep. 80:23–82:6, 90:24–91:12, 165:19–25. Ronald determined the minimum rate of pay based on his own research, but does not recall ever investigating the state minimum-wage law that applies to building superintendents. *Id.* at 80:20–81:15, 83:18–84:3, 87:12–25, 90:19–23. He also testified that he periodically reviewed Drasko's pay and asked Aldono to determine whether the minimum wage had changed. *Id.* at 88:25–90:15. In 2016, the defendants consulted a lawyer to ascertain whether Drasko was being paid a legal wage (*see* Defs.' 56.1 Resp. ¶ 67; R. Swartz Dep. 84:4–85:24), but they took no action to alter Drasko's compensation after the consultation (Defs.' 56.1 Resp. ¶ 70).

None of Drasko's paystubs that are contained in the record indicate the number of hours he worked or any deductions or allowances for housing or utilities. *Id.* ¶ 73; Wage Statements, *supra*. On one occasion, however, Drasko was presented with but refused to accept a wage notice claiming an allowance for lodging and utilities. Defs.' 56.1 Resp. ¶ 72.[9]

---

[8] The parties erroneously state that Drasko was paid "bi-monthly" (*e.g.*, Defs.' 56.1 Resp. ¶ 23), but the court's independent review of the record confirms that he was in fact paid semimonthly (*see* Wage Statements, *supra*).

[9] The record contains a single, unsigned wage notice. Although the notice lists the employer as Oneota, the rate of pay as $398.33 semimonthly, and allowances for an apartment and utilities of an undeclared amount, it

*Procedural Posture*

On August 28, 2017, Drasko and Rada sued Ronald, Steven, Oneota, and Paro for wages allegedly owed and related statutory damages. *See* Compl. 11, ECF No. 1. The plaintiffs now move for summary judgment on their claims that the defendants (a) violated the Fair Labor Standards Act by (1) failing to pay them minimum wage and (2) failing to pay Drasko overtime premium and (b) violated the New York Labor Law by (1) failing to pay them minimum wage and (2) failing to provide proper wage notices and wage statements. *See* Pls.' Br. 1, ECF No. 48-2. The defendants cross-move for partial summary judgment, seeking to dismiss all claims brought by Rada and all claims against Steven. Defs.' Notice of Mot. 1, ECF No. 43.

## DISCUSSION

"When cross motions for summary judgment are made, the standard is the same as that for individual motions." *United Indus. Corp. v. IFTE Plc*, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003). That is, I may grant summary judgment "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). On cross motions, I "must consider each motion independently of the other and, when evaluating each, . . . must consider the facts in the light most favorable to the non-moving party." *United Indus.*, 293 F. Supp. 2d at 299 (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

---

does not identify any employee. Wage Notice, ECF No. 48-14. Aldono testified that she offered Drasko a wage notice in January 2016 and may have also done so in January 2015. Aldono Dep. 45:12–46:21, 47:24–48:3. The notice in the record, however, bears the handwritten notation: "*8/27/2014*: Employee has refused to sign wage theft form." Wage Notice, *supra* (emphasis added). The document's significance, if any, is therefore unclear.

## A.      Employment Under the FLSA and NYLL

This case arises under the Fair Labor Standards Act and the New York Labor Law. "To be held liable under the FLSA, a person must be an 'employer,' which § 3(d) of the statute defines broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d)). Similarly, "an 'employee' is 'any individual employed by an employer,' and to 'employ' means 'to suffer or permit to work.'" *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (quoting § 203(d), (e)(1), (g)).[10] In view of this "broad language," the Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–43 (2d Cir. 2008)). "[W]hether an employer-employee relationship exists for purposes of the FLSA" is thus based on "economic reality rather than technical concepts." *Barfield*, 537 F.3d at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of the [FLSA].'" *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013) (alteration in original) (quoting 29 C.F.R. § 791.2(a)).

"'Employee' is defined nearly identically (and with equal circularity) in the FLSA and NYLL," and "'[e]mployer' is also defined similarly in the two statutes." *Id.* at 922. Thus, courts

---

[10] Additionally, as relevant here, the FLSA protects those who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The defendants concede that Oneota constitutes an enterprise engaged in commerce or in the production of goods for commerce under the FLSA. *See* Defs.' Opp'n 6–7, ECF No. 49.

in the Second Circuit typically "appl[y] the economic realities test to determine 'whether an employer/employee relationship exists under the FLSA *and* the NYLL.'" *Id.* (quoting *Campos v. Lemay*, No. 05 Civ.2089(LTS)(FM), 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007)).[11]

The parties do not dispute that an employment relationship existed between Drasko and Oneota. For the reasons that follow, I conclude that Paro and Ronald were also Drasko's employers, but find that genuine questions of material fact remain as to whether Steven was an employer and whether Rada was an employee.

### 1.  Paro Management

"[I]n certain circumstances," an employee may be able "to assert employer liability against an entity that is not formally his or her employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005). For example, "where two nominally separate entities"—such as "separate corporations under common ownership and management"—"are actually part of a single integrated enterprise," employees "may impose liability for certain violations of employment law not only on the[ir] nominal employer but also on another entity comprising part of the single integrated employer." *Id.* at 198 (first quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985); then citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir. 1995)).

The defendants urge that the single-integrated-employer doctrine should not be applied in the FLSA context. Defs.' Opp'n 7, ECF No. 49. Although the Second Circuit has not expressly ruled on the question, district courts in this circuit have regularly applied the doctrine in this context. *E.g.*, *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (citing *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2016 WL 4179942,

[11] In the briefs, neither party distinguishes between the federal and state definitions of "employer" or "employee." All my rulings herein with regard to employment status apply both to the FLSA and to the Labor Law.

10

at *5 (E.D.N.Y. Aug. 5, 2016)). Indeed, "[t]he Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer," and "the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *RSR*, 172 F.3d at 139 (first quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973); then quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Moreover, treating a truly integrated enterprise as a single employer comports with the Second Circuit's command to "look at the totality of the circumstances 'in light of economic reality.'" *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) (quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003)). I thus proceed to apply the single-integrated-employer doctrine in this case.

"Under this standard, courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *449 Rest.*, 29 F. Supp. 3d at 367 (citing *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091(ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)). Consideration of these factors compels the conclusion that Oneota, Paro, and the other entities that operate out of the defendants' office are a paradigmatic single integrated enterprise.

The undisputed evidence in the record reveals that these entities operate out of a shared office using shared employees, and that all are managed and controlled by Ronald. *See supra* pp. 2–3. Though Drasko nominally worked for Oneota, he received work assignments on a monthly basis from a Paro employee. *See, e.g.*, Aldono Dep. 37:19–39:10. Oneota, Paro, and the other entities "are so intertwined that it is difficult to tell where the business of [one] stops and the business of [another] begins." *Ayala*, 2016 WL 5092588, at *17. Indeed, they are so wholly integrated that neither their chief nor their office manager could identify which

11

employees worked for which company. *See* R. Swartz Dep. 30:4–15; Aldono Dep. 52:13–23. Nor does any written agreement delineate the services that Paro provides Oneota. *See* Defs.' 56.1 Resp. ¶ 4.

I thus conclude that defendants Oneota and Paro are part of a single integrated enterprise with the various other entities controlled by Ronald, and both corporate defendants are therefore liable as Drasko's employers. *See, e.g.*, *Garcia v. Chirping Chicken NYC, Inc.*, No. 15 CV 2335 (JBW) (CLP), 2016 U.S. Dist. LEXIS 32750, at *21 (E.D.N.Y. Mar. 11, 2016) (ruling that entities that "maintain the same address, owners, management, personnel, [and] equipment" and "are involved in the same industry" constituted single employer under FLSA and NYLL), *adopted by* 2016 U.S. Dist. LEXIS 46183 (E.D.N.Y. Mar. 31, 2016); *cf. United States v. Stanley*, 416 F.2d 317, 318 (2d Cir. 1969) (affirming that businesses "were a single 'enterprise'" when "[t]hey were all located at the same address; production employees were shifted from one to another; [and] the bookkeeping for all was performed by the same employees"). "Such a finding is consistent with 'the policy underlying the single employer doctrine,' namely, 'the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship.'" *Coley*, 2016 WL 4179942, at *5 (quoting *Chen v. TYT E. Corp.*, No. 10 Civ. 5288(PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)).

Moreover, because they form a single integrated enterprise, the defendant corporations constitute a "large employer" under the New York Labor Law. *See* N.Y. Lab. Law § 652(1)(a)(i) (providing for higher minimum-wage rates for "employer[s] of eleven or more employees"); *Minimum Wage*, N.Y. Dep't of Lab., https://www.labor.ny.gov/workerprotection /laborstandards/workprot/minwage.shtm (last visited Feb. 20, 2019) ("[W]herever there is joint employment, all employees at all entities must be totaled together to determine which

minimum wage rate applies.");[12] *cf. Arculeo*, 425 F.3d at 199 (ruling, in Title VII context, that all employees of single integrated employer could be aggregated to reach statutory threshold). The undisputed facts establish that there are at least ten employees of the entities who work in the central office, in addition to almost twenty superintendents and at least one porter employed by those entities. *See* R. Swartz Dep. 29:19–22, 42:3–43:5, 68:3–5. Although the exact number of employees of the single integrated enterprise is unknown, it clearly totals more than eleven.

Having found that the corporate defendants constitute a single integrated enterprise with more than eleven employees, I conclude that Paro is liable as an employer of Drasko and that the higher minimum wage for a "large employer" under the Labor Law applies.

### 2. *Ronald Swartz*

There is likewise no basis in the record to exclude Ronald as one of Drasko's employers.

In the context of individual defendants, "because the phrase 'acting directly or indirectly in the interest of an employer in relation to an employee' taken literally would support liability against any agent or employee with supervisory power over employees," the courts have cabined the broad statutory definition of employer somewhat. *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 628–29 (S.D.N.Y. 1996) (quoting statute). The Second Circuit has instructed district courts to look to "whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *RSR*, 172 F.3d at 139 (citation omitted) (quoting *Whitaker*, 366 U.S. at 33). Specifically, "the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or

---

[12] Guidance from the New York State Department of Labor is entitled to deference. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833–34 (2003).

conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Dutchess*, 735 F.2d at 12). That said, "[n]o one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances . . . ." *Id.* (citation omitted).

Under this test, Ronald was unquestionably Drasko's employer. He had the power to fire Drasko, which he exercised (*see* Defs.' 56.1 Resp. ¶ 75; Pls.' 56.1 Resp. ¶ 8); he supervised Drasko's work (*see* Pls.' 56.1 Resp. ¶ 12; D. Draskovic Dep. 77:20–78:9, 89:2–4); and he determined Drasko's salary (*see* R. Swartz Dep. 87:4–6). Although the record is unclear regarding who, if anyone, maintained Drasko's employment records (*see* Aldono Dep. 31:14–18 ("There is no one individual [who] maintains records for any entity.")), "that this fourth factor is not met is not dispositive" (*RSR*, 172 F.3d at 140). Ronald is liable as an employer under the FLSA and the New York Labor Law.

### 3. *Steven Swartz*

The more difficult question is whether his brother Steven can similarly be considered an employer. The undisputed facts with respect to Steven are few: he has an ownership interest in Oneota and, until around 2015, regularly appeared at Drasko's building to instruct Drasko regarding his work. *See* Pls.' 56.1 Statement ¶ 6; D. Draskovic Dep. 224:5–8; R. Draskovic Dep. 99:10–12; S. Swartz Dep. 13:4–8, 16:21–17:10; R. Swartz Dep. 59:17–24, 125:6–23.

If viewed in the light most favorable to the defendants, these facts suggest only that Steven was at one point a supervisor who oversaw Drasko's work on behalf of Ronald. Admittedly, the FLSA's broad language is designed to create a "financial incentive for individuals with control, even in the form of delegated authority, to comply with the law." *Irizarry*, 722 F.3d at 110. But serving as a midlevel supervisor, without more, is not typically

14

sufficient to give rise to employer liability. *See, e.g.*, *Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349 (ARR)(VMS), 2013 WL 5210142, at *7 (E.D.N.Y. Sept. 13, 2013).

Viewed in the light most favorable to the plaintiffs, however, the record supports the inference that there was a period of time during which Steven held ultimate authority over Drasko's work, as Steven's brother Ronald did in later years before Drasko was terminated. *See* D. Draskovic Dep. 12:16–21, 77:22–25, 89:2–6, 119:4–7 (testifying that Steven was his boss before Ronald took over); *cf.* S. Swartz Dep. 44:18–19 (acknowledging some past involvement in the management of Drasko's building). And though it is undisputed that Steven was not involved in the decision to fire Drasko in 2017 (*see* Pls.' 56.1 Resp. ¶ 9), there is no evidence in the record supporting an inference that Steven lacked the authority to hire and fire before 2015. I thus find a genuine dispute of fact as to whether Steven can be held liable as an employer, and deny both cross-motions for summary judgment on this issue. *See also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012) ("[I]ndividual employer liability is rarely suitable for summary judgment." (citing *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS)(AKT), 2011 WL 317971, at *6 (E.D.N.Y. Jan. 28, 2011))).

### 4. *Rada Draskovic*

The "'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. "The Second Circuit has overseen a proliferation of multi-factor tests" for determining the economic reality of a relationship, "depending on the circumstances." *449 Rest.*, 29 F. Supp. 3d at 367. Multifactor tests have been crafted for distinguishing employees from interns, domestic employees from family members, and employees from independent contractors (*see Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536–37 (2d Cir. 2016) (citing *Velez v. Sanchez*, 693 F.3d 308, 330 (2d

Cir. 2012), and *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1998))), but "[t]he facts before the Court do not fit squarely within" any of these tests (*Figurowski v. Marbil Inv'rs, LLC*, No. 14-CV-7032(JS)(AKT), 2018 WL 1582072, at *9 (E.D.N.Y. Mar. 30, 2018), *appeal withdrawn*, No. 18-1296, 2018 WL 5733666 (2d Cir. July 31, 2018)). Nevertheless, FLSA case law highlights two factors of significance in making this determination.

The first factor is the identity of the primary beneficiary of Rada's work. The Supreme Court has explained that the FLSA's broad definition of "employ"—"to suffer or permit to work"—is "obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). However, "some motivation to work in addition to material gain[ ] does not preclude the application of the FLSA." *Velez*, 693 F.3d at 328. The second factor concerns the defendants' awareness of the work Rada was performing. "While an employer must pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) (citation omitted). Thus, in cases where nominally unemployed family members assist employed relatives with their work, the status of the family members under the FLSA has typically turned on whether the employer reaps a benefit from the additional laborers, and whether the employer is aware of the work being performed.

For example, in *Barras v. Salt River Valley Water Users' Ass'n*, 249 F.2d 952 (9th Cir. 1957), the court ruled that certain employees' wives were not themselves employees because their work was "performed voluntarily, unknown to the defendant, and not under the direction and control of defendant, but at the request of their husbands." *Id.* at 954 (quoting district court). In *Barras*, the plaintiffs lived with their employee husbands in houses provided by the

defendant employer, where the husbands were required to live, and assisted their husbands in their work both administratively and through physical labor. *See id.* at 953. The plaintiffs argued that the defendant "required the wives to work, for, if the work were not done, the [husband] would be let go." *Id.* But this argument failed in light of findings by the district court that "[a]ssistance by the wife or other members of the family was not necessary for the efficient performance of the [husband]'s duties. All such work performed by plaintiffs was work for which the husband was paid by defendant . . . ." *Id.* at 954 (quoting district court).

By contrast, in *Burry v. National Trailer Convoy, Inc.*, 338 F.2d 422 (6th Cir. 1964), the court ruled that "defendant with knowledge suffered and permitted [the plaintiff wife] to work for it, so that she became an employee within the meaning of the [FLSA]." *Id.* at 426. In *Burry*, as in *Barras*, a wife assisted her employee husband with work that he performed for the defendant employer from their home office. *See id.* at 424. But unlike in *Barras*, the employer also required the husband to transport goods and thus "be away from the [office] for days at a time," and the district court found that the wife "with the knowledge of defendant 'performed all the necessary duties incident to the maintenance and operation of the [office] when [her husband] was absent.'" *Id.* (quoting district court). The wife in *Burry* was thus not simply helping her husband with work that he was expected and paid to do himself, as had been the case in *Barras*.

Similarly, in *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508 (5th Cir. 1969), the court ruled that the employer "suffered or permitted minors to work on its premises" such that they were employees. *Id.* at 513. *Gulf King* centered on the operation of a "heading shed," where people, "often in family groups," decapitated shrimp, piece work for which they were paid by the bucket. *Id.* at 510–11. "[S]everal members of a single family [would often] work under only one" family member's name, and the employer would ultimately pay the named individual for

17

the entire family's work. *Id.* at 511. Because the employer had at least constructive knowledge that the minors were working in the heading shed, and because these minors "performed 'the same services beneficial to Gulf King as did the other shrimp headers,'" the court determined that such minors were rightly considered employees. *Id.* at 513 (quoting district court). Again, as in *Burry*, the employer was receiving more labor than it would have received from its nominal employees alone, a fact that was key to determining that the additional workers were also employees. *See id.* at 514 (distinguishing *Barras* in that "what small services the wives rendered to the company [in *Barras*] were found to be unnecessary to the efficient performance of their husbands' duties").

Both parties point me to *Figurowski*, *supra*, in which Judge Seybert of this district determined that, "under all the circumstances" of that case, a superintendent's wife was not an employee of her husband's employer. 2018 WL 1582072, at *10. *Figurowski* resembles this case in several respects: the wife lived with her husband in an apartment provided by the employer and helped her husband with the superintendent work, including sending emails on his behalf, despite never being formally hired by the defendants. *See id.* at *9. But critically, in *Figurowski*, Judge Seybert determined that "Defendants received no additional benefit simply because [the wife], rather than her husband, performed those tasks." *Id.* Rather, "[t]he primary beneficiaries of [her] efforts were not Defendants, but [she and her husband]." *Id.* at *10.

The instant case is distinguishable. Viewing the facts in the light most favorable to the plaintiffs, Rada was directed to, and did, help Drasko with his work and regularly communicated with the defendants about work at the building. Moreover, her work benefitted the defendants by facilitating clear communication between Drasko and the defendants, showing the building's apartments to more potential tenants than otherwise would have seen them, and tending a garden that otherwise would not have been maintained. *See supra* pp. 4–5.

18

Because much of the work Rada claims to have done could not, according to the plaintiffs, have been performed by her husband—either because of his limited English proficiency or because he was simultaneously occupied performing other work for the defendants (*see* R. Draskovic Dep. 42:24–43:14, 57:17–58:24, 72:8–24; *cf. Burry*, 338 F.2d at 424)—I cannot conclude as a matter of law that none of her work primarily benefitted the defendants.

On the other hand, viewing the facts in the light most favorable to the defendants, Rada merely conveyed messages to and from Drasko, and any other work that she took on was both unknown to the defendants and undertaken to lighten Drasko's workload or otherwise to benefit her and her husband personally. *See* R. Swartz Dep. 98:5–100:2, 124:9–23, 136:2–6, 170:9–13, 188:12–14, 189:20–192:8; R. Draskovic Dep. 40:19–41:23, 44:11–45:2, 46:13–19, 64:15–17; Pls.' 56.1 Resp. ¶ 26. Accordingly, I must deny both cross-motions for summary judgment on the issue of whether Rada was employed by the defendants.

## B.     FLSA Minimum Wage and Overtime

The plaintiffs seek summary judgment on their claims that the defendants owe them damages for unpaid minimum wage and overtime under the FLSA. Because the question of Rada's employment is unresolved, I necessarily deny summary judgment on all of her claims. As for Drasko, it is clear that he was paid less than the minimum wage and was not paid overtime, but the record contains insufficient evidence of his hours to calculate his damages precisely. I therefore grant Drasko summary judgment as to liability on his FLSA minimum-wage and overtime claims, but I deny summary judgment as to the amount of his damages (*see infra* Section B.1–2) and as to whether the defendants' conduct was willful or in good faith—each a factor in calculating damages (*see infra* Section B.3–4).

*1. Minimum Wage Under the FLSA*

The plaintiffs argue that Drasko was paid below the minimum wage. Minimum-wage compliance is a function of the amount paid and the hours worked. In this case, the amount paid is known, but the hours worked are not. Because, in the absence of the defendants' required documentation, I may rely on the plaintiff's uncontradicted recollection, I find the evidence in the record sufficiently clear to establish that Drasko's salary violated the FLSA's minimum-wage requirement, but his estimates of hours worked are too imprecise to calculate damages at this time.

The FLSA entitles employees to "a minimum hourly wage." *Moon v. Kwon*, 248 F. Supp. 2d 201, 227 (S.D.N.Y. 2002) (citing 29 U.S.C. § 206(a)). "At all times relevant to this lawsuit," that wage was $7.25 per hour. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (citing § 206(a)(1)(C)), *aff'd*, No. 17-3356-cv, 2018 WL 5098817 (2d Cir. Oct. 18, 2018). In fact, Drasko was paid $398.33 semimonthly (*see* Defs.' 56.1 Resp. ¶ 23; Wage Statements, *supra*), which is equivalent to $183.84 per week. Given the $7.25 minimum wage, therefore, Drasko was legally compensated for approximately 25.36 hours of work per week. Any hours he worked in excess of that number in any week would have been uncompensated in violation of the minimum-wage provisions of the FLSA.

Because the defendants did not document Drasko's hours (*see* Pls.' 56.1 Statement ¶ 26), there is nothing in the record to prove how many hours Drasko worked other than his own recollection and estimates. "It is well-settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penalized due to their employer's record-keeping default." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997). Accordingly, "in such cases, employees need only . . . produce 'sufficient evidence to show the amount and extent of [compensable] work as a matter of just and reasonable inference.'" *Id.*

(quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). The Second Circuit has confirmed that "it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel*, 643 F.3d at 362. Once a plaintiff has done so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *S. New Eng.*, 121 F.3d at 67 (quoting *Mt. Clemens*, 328 U.S. at 687–88).

The plaintiffs have presented somewhat imprecise estimates of the hours Drasko worked. In their complaint, they alleged that Drasko "typically" worked more than sixty hours per week until around September 2016 and worked approximately seventy hours per week thereafter. Compl. ¶¶ 24, 43. But at his deposition, Drasko testified that he worked "sometime[s] 40, sometimes 50, sometimes 60, sometimes 70 hour[s] in a week." D. Draskovic Dep. 79:18–19.[13] The defendants argue that his testimony cannot be credited (*see* Defs.' Opp'n 15–16) but offer no evidence to negate the reasonable inference that Drasko indeed worked between forty and seventy hours each week.[14] And though the defendants state that "Drasko

---

[13] In an affidavit submitted in connection with the plaintiffs' motion for summary judgment, Drasko states that his "best estimate" is that he worked *more* than seventy hours "each week." Draskovic Aff. ¶ 10. On summary judgment, parties may not rely on affidavits to "contradict[ ] the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Accordingly, I do not credit this statement and instead rely on Drasko's sworn deposition testimony.

[14] The only evidence defendants offer to dispute Drasko's recollection of his hours worked as superintendent concerns Drasko's simultaneous proprietorship of a painting company. *See* Defs.' Opp'n 16. However, in light of Drasko's unrefuted testimony that his son and another individual did most of the work of the company (*see* D. Draskovic Dep. 34:11–18, 36:14–19, 39:23–40:4, 70:22–71:21) and that any work Drasko performed was largely confined to early mornings, nights, and weekends (*see id.* at 101:7–23), this evidence is of little or no probative value in refuting Drasko's estimated hours. *Cf. Moon*, 248 F. Supp. 2d at 221 n.12 ("Especially since the defendants make no effort to quantify the time Moon supposedly spent working at the fish market, rather than the hotel, the Court does not deem this contention sufficient to refute Moon's testimony concerning the hours he spent working at the hotel.").

21

was expected to work only 20 hours per week" (*id.* at 4), the law is clear that "if an employer does not want an employee to perform work, then 'it is the duty of management to exercise its control and see to it that the work is not performed . . . . It cannot sit back and accept the benefits without compensating for them'" (*Moon*, 248 F. Supp. 2d at 228 (quoting 29 C.F.R. § 785.13); *accord Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) (citing *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997))).

While providing ample basis to resolve the issue of whether defendants are liable to Drasko for some amount of damages under the minimum-wage provisions of the FLSA, the record is too sparse to support a just and reasonable calculation of a precise amount of damages. Because Drasko's testimony that he worked *between* forty and seventy hours each week is uncontroverted and the defendants do not reasonably refute that he worked more than 25.36 hours per week, it is indisputable that Drasko was underpaid.[15] Put another way, the fact of "damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer." *Mt. Clemens*, 328 U.S. at 688. Drasko is entitled to partial summary judgment as to liability, though "[t]he amount of damages to be awarded . . . [must] be determined at trial." *Berrios*, 849 F. Supp. 2d at 391.

## 2. *Overtime Under the FLSA*

Drasko is also seeking summary judgment on the issue of unpaid overtime compensation. The "FLSA requires an employer to compensate its employees for overtime 'at a rate not less than one and one-half times the regular rate at which he is employed'" for any

---

[15] In certain circumstances, an employer may count toward the FLSA's minimum-wage requirement "the reasonable cost . . . to the employer of furnishing [the] employee with board, lodging, or other facilities." 29 U.S.C. § 203(m)(1). Although the defendants provided the plaintiffs with an apartment and utilities, the plaintiffs rightly observe that the defendants have failed to quantify the cost of doing so (Pls.' Br. 20–21). Accordingly, for purposes of the instant motions, I cannot credit the defendants with any allowance against the minimum wage. *See, e.g.*, *Severino v. 436 W. LLC*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *6 (S.D.N.Y. Mar. 19, 2015).

hours worked in excess of forty in a single week. *Moon*, 248 F. Supp. 2d at 230 (quoting 29 U.S.C. § 207(a)(1)). As with the minimum wage, it is clear that Drasko is entitled to recover for unpaid overtime. *See Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009) ("If [the defendants] failed to compensate [the plaintiff] properly for even one hour of overtime, liability is established."). But because the record does not permit a fair and reasonable estimation of the number of hours he worked, the amount of his damages cannot currently be calculated. *See Kuebel*, 643 F.3d at 364–65.

Unlike the number of hours worked, however, because Drasko's "regular rate" of pay is determinable on the current record, his overtime rate is likewise calculable. For the purposes of the FLSA's overtime provisions, an employee's "regular rate 'is computed by dividing the salary by the number of hours which the salary is *intended* to compensate.'" *Adams v. Dep't of Juvenile Justice*, 143 F.3d 61, 66 (2d Cir. 1998) (quoting 29 C.F.R. § 778.113(a)).[16] "While an employer may agree to compensate an employee with a weekly, monthly, or annual salary, an employee's regular rate is nevertheless an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended." *Moon*, 248 F. Supp. 2d at 230 (citing 29 C.F.R. §§ 778.109, 778.113(a)).

Although the number of hours that Drasko actually worked is unknown, the record is clear that his pay was intended to compensate him for a twenty-hour workweek. *See, e.g.*, R. Swartz Dep. 91:9–12. Since he was paid $398.33 twice a month, Drasko's "regular rate" within

---

[16] Such regular rate cannot, however, be less than the applicable minimum wage under state or federal law. *See* 29 C.F.R. § 778.5.

the meaning of the FLSA was $9.19 per hour.[17] Accordingly, Drasko is entitled to at least 150% of that, $13.79 per hour, for every hour in excess of forty that he worked each week. [18]

### 3. The FLSA Limitations Period

"The FLSA generally provides for a two-year statute of limitations . . . , but allows a three-year limitations period for 'a cause of action arising out of a willful violation." *RSR*, 172 F.3d at 141 (quoting 29 U.S.C. § 255(a)). Thus, although Drasko started working for Oneota in 1999 (*see* Pls.' 56.1 Statement ¶ 13), his recovery under the FLSA is limited to his underpayment during the two years preceding the filing of the complaint, unless the plaintiffs can show that the defendants' violation was willful, extending recovery to a three-year period.

"The accepted standard for determining willful behavior, for which plaintiff bears the burden of proof, [is] . . . 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *RSR*, 172 F.3d at 141 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "[T]he standard for proving willfulness is high. . . . 'Plaintiffs must prove more than that defendant "should have known" it was violating the law." *Hart*, 967 F. Supp. 2d at 937 (quoting *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819(GEL), 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005)). As such, "[c]ourts within this Circuit have [often] left the question of willfulness to the trier of fact." *Berrios*, 849 F. Supp. 2d at 391.

---

[17] Drasko's semimonthly salary of $398.33 equates to an annual salary of $9559.92 and a weekly salary of $183.84. At twenty hours a week, his regular rate of pay was thus $9.19 per hour.

[18] Under the FLSA, "the regular rate of pay" generally includes "the reasonable cost or fair value of all . . . lodging provided by an employer." *Moon*, 248 F. Supp. 2d at 230 (citing 29 C.F.R. §§ 778.116, 778.202). Consistent with their position that the defendants are not entitled to an allowance against the minimum wage (*see supra* note 15), the plaintiffs do not argue that Drasko's regular rate should be augmented by the value of the plaintiffs' apartment. Accordingly, and because nothing in the record establishes the value of the apartment, I have "exclude[d] the housing component in determining [Drasko]'s rate of pay" for the purposes of these motions. *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB)(JO), 2014 WL 1310311, at *9 (E.D.N.Y. Mar. 10, 2014), *adopted in relevant part by* 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014).

In this case, viewing the facts in the light most favorable to the defendants, I cannot say as a matter of law that the defendants' violation of the FLSA was willful. Ronald testified that he intended to pay Drasko at least the minimum wage and attempted to keep abreast of any increase in that rate. *See* R. Swartz Dep. 80:20–81:3, 87:12–25, 88:25–90:15. And it is undisputed that the defendants retained an outside lawyer to review whether Drasko's remuneration comported with the law. *See* Defs.' 56.1 Resp. ¶ 67. Crediting the defendants' evidence of attempts at compliance, material disputes of fact in the record foreclose summary judgment to plaintiffs on this issue.

### 4. *Liquidated Damages Under the FLSA*

The plaintiffs also argue that they should receive double damages due to the defendants' failure to act in good faith. *See* Pls.' Br. 21–22.

Under the FLSA, a plaintiff is presumptively entitled to "liquidated damages equal in amount to actual damages," unless "the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield*, 537 F.3d at 150 (quoting 29 U.S.C. § 260). "'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA, and then move to comply with them." *S. New Eng.*, 121 F.3d at 71. As a result, the employer's "burden is a difficult one, with double damages being the norm and single damages the exception." *RSR*, 172 F.3d at 142.

The facts relevant to the question of good faith are largely the same as those pertinent to willfulness (*see supra* Section B.3), though the burden is on the defendants, not the plaintiffs. "For much the same reasons" as stated above with respect to willfulness, "plaintiffs' motion for summary judgment as to good faith . . . is denied." *Hart*, 967 F. Supp. 2d at 938.

25

C.      **NYLL Minimum Wage and Statutory Damages**

The plaintiffs also seek summary judgment on their claims that the defendants owe them damages for unpaid minimum wage and for failure to provide adequate wage notices and wage statements under the New York Labor Law. As with the FLSA, I necessarily deny summary judgment on all of Rada's claims, as she has not been determined to be an employee of defendants. Drasko, on the other hand, is entitled to recover for unpaid minimum wage, but because his damages are as yet uncertain and he cannot recover under both the FLSA and the Labor Law for the same time period, I deny summary judgment with respect to his minimum-wage damages. *See infra* Section C.1. And for the reasons set forth below, I deny the plaintiffs' motion with respect to wage notices (*see infra* Section C.3) but grant it with respect to wage statements (*see infra* Section C.4).

1.  *Minimum Wage Under the NYLL*

Like the FLSA, the Labor Law guarantees employees a minimum wage (*see* N.Y. Lab. Law § 652(1)) and mandates that, in general, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" (*Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 300 (E.D.N.Y. 2016) (quoting 12 N.Y.C.R.R. § 142-2.2)). "As a superintendent in a residential building," however, Drasko is "covered by a unique provision of the New York minimum wage law" that applies to "residential janitor[s]" (i.e., superintendents). *Severino v. 436 W. LLC*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *10 n.20 (S.D.N.Y. Mar. 19, 2015).[19]

---

[19] The following discussion pertains to Drasko's damages under the Labor Law's special provision for residential janitors. Only one employee per building may be designated the "janitor" under that provision. *See Contrera v. Langer*, 290 F. Supp. 3d 269, 275 (S.D.N.Y.), *adopted by* No. 16 CV 3851-LTS-GWG, 2018 WL 3918179 (S.D.N.Y. Aug. 16, 2018). Therefore, if Rada is ultimately found to have been employed by defendants as well, she will be entitled to recover under the Labor Law's regular hourly minimum wage.

"Instead of requiring an hourly minimum wage and overtime premium, New York requires employers in the building service industry to pay janitors in residential buildings a weekly minimum based on the number of units in the building, subject to a cap." *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB)(JO), 2014 WL 1310311, at *10 (E.D.N.Y. Mar. 10, 2014) (citing 12 N.Y.C.R.R. §§ 141-1.2, -2.8), *adopted in relevant part by* 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014). For example, in 2011, the earliest year for which the plaintiffs can recover under the Labor Law,[20] a "resident or nonresident janitor" was entitled to be paid $4.85 per unit per week (12 N.Y.C.R.R. § 141-1.2(b) (2013)), up to a cap of $308.35 per week (*see* 12 N.Y.C.R.R. § 141-2.8(b) (2013)). Because the plaintiffs' building has 116 units, the Labor Law thus required Drasko's employer to pay him at least $308.35 per week in 2011.[21]

That required minimum wage rose to $340.25 per week on December 31, 2013 (*see* § 141-2.8(c) (2013)), to $372.15 per week on December 31, 2014 (*see* § 141-2.8(d) (2013)), to $382.80 per week on December 31, 2015 (*see* § 141-2.8(e) (2013)), and to $467.85 per week, for "large," New York City-based employers, on December 31, 2016 (*see* § 141-2.8(a)(1) (2016)).[22] Throughout this period, by contrast, Drasko was paid only $398.33 semimonthly. *See* Defs.' 56.1 Resp. ¶ 23; Wage Statements, *supra*. He is therefore entitled to unpaid minimum wage under the Labor Law.[23] The uncertainty as to the number of hours he worked, however,

---

[20] "The NYLL's statute of limitations is six years." *Gamero*, 272 F. Supp. 3d at 498 n.7 (citing N.Y. Lab. Law § 663(3)).

[21] For the entirety of the relevant statutory period, the building's 116 units would result in a per-unit weekly wage greater than the statutory cap, and thus each year Drasko was entitled to the cap.

[22] As noted earlier, Drasko's employer is to be considered "large" for purposes of the Labor Law. *See supra* Section A.1.

[23] The defendants argue that they are "entitled to claim an allowance [under the Labor Law] for the apartment undisputedly provided to plaintiff Drasko as the Building's live-in superintendent." Defs.' Opp'n 18. The Labor Law does grant employers an allowance against the minimum wage for "[a]n apartment furnished by an employer to an employee in a residential building, and occupied by him," based on the building's rental value in 1975 (12 N.Y.C.R.R. § 141-1.5), provided that certain requirements are met (*see, e.g.*, 12 N.Y.C.R.R.

renders it impossible to determine whether his unpaid wages under the Labor Law are more or less than his unpaid wages under the FLSA.[24] Thus, his motion for summary judgment can be granted only as to liability.

### 2. Liquidated Damages Under the NYLL

Similarly to the FLSA, the Labor Law allows plaintiffs to recover "liquidated damages equal to one hundred percent of the total . . . underpayments found to be due" "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1). Although this text "is not identical to that of the FLSA . . . , courts have not substantively distinguished the federal standard from the current state standard of good faith." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015). And the parties here agree that the standard for liquidated damages is essentially the same under the FLSA and the Labor Law. *See* Pls.' Br. 21; Defs.' Opp'n 20. As set forth above with respect to the FLSA (*see supra* Section B.4), the defendants have raised a genuine question of fact as to their good faith, and so I deny summary judgment on this issue.

### 3. Wage Notices

The New York Labor Law also imposes certain notice requirements on employers. One such requirement is that each employer "provide his or her employees . . . , at the time of hiring, a notice containing" certain information, including the employee's "rate or rates of

---

§ 141-2.4). But, again, the defendants have adduced no evidence of the amount of any such allowance in this case. *Cf. supra* notes 15, 18. I cannot deny summary judgment based on speculation as to the amount of a housing allowance for which the defendants might not even qualify. *See Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). At trial, the burden will fall on defendants to establish their entitlement to an allowance. *See Severino*, 2015 WL 12559893, at *5 (citing *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 256–57 (S.D.N.Y. 2008)).

[24] A plaintiff "is not entitled to recover cumulative damages for unpaid wages under both federal and state law." *Llolla*, 2014 WL 1310311, at *11. Instead, Drasko "may recover under the statute which provides the greatest amount of damages." *Jiao v. Chen*, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007).

pay and basis thereof." N.Y. Lab. Law § 195(1)(a) (2014). A previous version of this statute, which was enacted on April 9, 2011, also required this notice to be provided to employees "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1)(a) (2011). At all relevant times, the law explicitly granted a private cause of action to "any employee" who did not receive the required notice "within ten business days of his or her first day of employment." § 198(1-b). It also stated that the Commissioner of Labor could bring an action "[o]n behalf of any employee not provided [the] notice as required." *Id.* Plaintiffs argue that the defendants failed to provide Drasko with the required notice (*see* Pls.' Br. 22), a claim on which they now seek summary judgment.

The claim fails as a matter of law. First, because the 2011 statute "is not retroactive" (*Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013)), "[a]n employee [such as Drasko] who began working before April 2011 would not have been required to receive [a] notice of his wages within ten business days of his or her first day of employment." *Severino*, 2015 WL 12559893, at *9. Although at least one court has concluded that "any employee whose wage rate *changed* at any point after April 9, 2011, could maintain a cause of action," I need not reach that issue "[b]ecause [Drasko] began his employment prior to April 9, 2011, *and* his wage rate did not subsequently change." *Id.* (second emphasis added) (citing *Cuzco v. F & J Steaks 37th St. LLC*, No. 13cv1859 (PAC), 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014)). Thus Drasko has no claim for lack of a wage notice "at the time of hiring" (N.Y. Lab. Law § 195(1)(a) (2014)).

Nor can Drasko recover for the defendants' failure to provide him with a wage notice "on or before February first of each subsequent year" (N.Y. Lab. Law § 195(1)(a) (2011)). "[T]he plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or

before February first of any subsequent year." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 570 (E.D.N.Y. 2015) (quoting *Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335(RA)(JCF), 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012)). As a result, "even if Plaintiffs did not receive annual wage notices on, for example, February 1, 2013, they cannot recover damages for that violation of Section 195(1)." *Gamero*, 272 F. Supp. 3d at 510 n.13.

The plaintiffs cite *Ortiz v. Arthur T. Mott Real Estate, LLC*, No. CV 15-3940 (SJF)(AYS), 2016 U.S. Dist. LEXIS 127597 (E.D.N.Y. Sept. 15, 2016), for the proposition that "employees hired prior to 2011" may nevertheless recover under the statute. Pls.' Reply 9, ECF No. 50. But neither *Ortiz* nor the case it relies on, *Guaman v. Krill Contracting, Inc.*, No. 14-CV-4242 (FB)(RER), 2015 WL 3620364 (E.D.N.Y. June 9, 2015), addressed the question of whether the plaintiffs in those cases had a private right of action in the first place. Because plaintiffs here offer no reason why I should look past the "plain language of the statute." (*Tuttnaeur*, 78 F. Supp. 3d at 570 (quoting *Lin*, 2012 WL 7620734, at *8)), they are not entitled to summary judgment on this claim.

### 4.   *Wage Statements*

Beyond the wage notice, the Labor Law also requires employers to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

N.Y. Lab. Law § 195(3). The implementing regulations for the building service industry further provide that the statement must list "hours worked" and, "[i]n the case of janitors, the number of units shall be recorded in the place of hours worked." 12 N.Y.C.R.R. § 141-2.2. The law explicitly grants a cause of action to "any employee . . . not provided [such] statement or statements as required," and states that he may recover "two hundred fifty dollars for each

work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. Law § 198(1-d).

The record contains thirty-eight wage statements provided to Drasko by Oneota. *See* Wage Statements, *supra*. Although the statements contain most of the legally required information, they do not state the number of hours or apartment units for which Drasko was being paid. *See id.* Nor do they indicate that Oneota was claiming any allowances as part of the minimum wage (*see id.*), though that would violate the law only if an allowance were in fact being claimed (*cf. supra* notes 15, 23 (noting ambiguity of record on this issue)).[25] The defendants make no attempt to justify their failure to comply with the clear requirements of the law. Drasko is thus entitled to summary judgment on this claim. *Cf. Severino*, 2015 WL 12559893, at *10 (granting summary judgment for plaintiff based on court's "independent review of the pay stubs introduced into the record"). As the violations plainly continued for more than twenty pay periods, Drasko is entitled to the maximum statutory damages, $5000. *See* N.Y. Lab. Law § 198(1-d).

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment is denied in its entirety, and the plaintiffs' motion is denied in part and granted in part. Specifically, the plaintiffs are granted partial summary judgment against Oneota Associates, Paro Management, and Ronald Swartz on the issues of these defendants' liability to Drasko Draskovic for (1) unpaid minimum wage and overtime under the FLSA in an amount to be determined at trial, (2) unpaid minimum wage under the New York Labor Law in an amount to be determined at trial, and (3) violations of the Labor Law's wage-statement provisions in

---

[25] Virtually all the wage statements in the record issued before September 2016 also failed to provide the employer's phone number, though the defendants seem to have since corrected that omission. *See* Wage Statements, *supra*.

the amount of $5000.00. In all other respects, the plaintiffs' motion for summary judgment is denied.

So ordered.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        February 21, 2019
              Brooklyn, New York